**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DOLLAR TREE STORES, INC. <br><br> *Plaintiffs,* <br><br> v. <br><br> CINCINNATI INSURANCE COMPANY, <br><br> *Defendant.* | Civil Action No. <br><br><br> Wednesday, August 20, 2025 |

**COMPLAINT**

Plaintiff Dollar Tree Stores, Inc. ("Dollar Tree"), as and for its Complaint against

Defendant Cincinnati Insurance Company ("Cincinnati"), alleges the following:

**NATURE OF THE ACTION**

1.       In December of 2019, non-party Zephyr Solutions LLC ("Zephyr") and

Dollar Tree entered into a Product Supply Agreement pursuant to which Zephyr agreed

to supply Dollar Tree with helium products to be sold at Dollar Tree stores, along with

the high-pressure cylinders required to transport and store the helium. *See* Product

Supply Agreement dated December 20, 2019, entered into by and between Zephyr and

Dollar Tree (the "Agreement"), attached hereto as **Exhibit A**. Under the terms of the

Agreement, Zephyr was required to procure insurance, including Commercial General

Liability insurance covering claims for personal injury, naming Dollar Tree as an

additional insured.

2.       In accordance with the terms of the Agreement, Zephyr purchased a

Commercial General Liability insurance policy from Defendant Cincinnati (Policy No.

EPP0567788) (the "Policy" or "Cincinnati Policy"), which covers Dollar Tree as an

additional insured. Pursuant to a Certificate of Insurance provided by Zephyr's broker, Althans Insurance Agency, Inc., the Policy provides $1 million in personal injury coverage, $2 million in products liability coverage, and $2 million in umbrella coverage for the policy period covering February 6, 2022 through February 6, 2023 ("Policy Period"). *See* Certificate of Insurance, attached hereto as **Exhibit B**. The Certificate of Insurance states that "Dollar Tree Stores, Inc." constitutes an additional insured for general liability when required by a written contract with the named insured. *Id.*

3.      On October 5, 2022 (squarely within the Policy Period), Norma Pellot filed a personal injury action against Dollar Tree in the Connecticut Superior Court for the Judicial District of Bridgeport, captioned *Norma Pellot v. Dollar Tree Stores, Inc., Krystal Booth, Tiasia Brown, and Zephyr Solutions LLC*, Docket No. FBT-CV22-6118553-S (the "Underlying Action"). In the Underlying Action, Ms. Pellot claimed that while purchasing helium at a Dollar Tree store in Norwalk, Connecticut, a place of business where Dollar Tree usually, customarily, and ordinarily carries out business in the state, she suffered personal bodily injury after a helium tank nozzle exploded and injured her hand.

4.      Dollar Tree and/or Zephyr provided timely notice of the Underlying Action to Cincinnati and complied with all conditions precedent under the Policy. Dollar Tree is entitled to coverage for the Underlying Action under the Cincinnati Policy. Nevertheless, Cincinnati has wrongfully denied coverage for the Underlying Action – refusing to provide either a defense or indemnification to Dollar Tree for the Underlying Action.

5.      Accordingly, Dollar Tree seeks a judicial declaration that it has defense and indemnity coverage for the Underlying Action under the Cincinnati Policy. Dollar Tree also brings causes of action against Cincinnati for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices and Unfair Insurance Practices Acts ("CUTPA" and "CUIPA", respectively). Dollar Tree seeks actual and consequential damages, as well as reasonable attorneys' fees, pre- and post-judgment interest, and extracontractual damages for Cincinnati's bad faith claims handling practices.

## THE PARTIES

6.      Dollar Tree is a corporation organized and existing under the laws of Virginia, with its corporate headquarters and principal place of business in Chesapeake, Virginia.

7.      Cincinnati is a corporation organized and existing under the laws of the State of Ohio, with its corporate headquarters and principal place of business in Fairfield, Ohio.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over all parties to this action pursuant to Conn. Gen. Stat. § 38a-25 because Cincinnati is a licensed property and casualty insurance company by the State of Connecticut Insurance Department

authorized to conduct business in the State, the State of Connecticut Insurance

Commissioner is the agent for service of legal process on Cincinnati, and any legal

process served on the Commissioner is of the same legal force and validity as if served

on Cincinnati.

10.    This Court also has personal jurisdiction over Cincinnati pursuant to

Conn. Gen. Stat. § 33-929(f), because Cincinnati transacted business in the State of

Connecticut, and Dollar Tree's claims against Cincinnati arise out of Cincinnati's

obligations under the contract of insurance that were to be performed in this State.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to the claims occurred in this

District.

## FACTUAL BACKGROUND

## THE CINCINNATI INSURANCE POLICY

12.    The helium nozzle or regulator referenced in Norma Pellot's initial

complaint ("Underlying Complaint"), filed in the Underlying Action on October 5, 2022,

was manufactured by Zephyr. *See* Underlying Complaint, attached hereto as **Exhibit C.**

13.    Under the Agreement (*see* **Exhibit A**, Agreement), Dollar Tree contracted

to purchase helium gas from Zephyr, as well as the necessary products for the sale of the

helium (including helium cylinders, cylinder caps, and other products including nozzles

or regulators).

14.    Section 14 of the Agreement required Zephyr to carry insurance naming

Dollar Tree as an additional insured, with the following requirements:

4

a.    **INSURANCE TO BE CARRIED.** During the Term of this Agreement, Supplier shall maintain a primary policy of: (a) occurrence-based commercial general liability insurance, covering liability arising from premises, operations, independent contractors, products, completed operations, personal injury, advertising injury and liability assumed under an insured contract, with limits of at least $1,000,000 per occurrence, and $2,000,000 aggregate; (b) Workers Compensation of at least $500,000 or such greater amount as is required by law for the state(s) in which the work is performed; (c) Auto Liability Coverage of at least $5,000,000; (d) Employer's Liability of at least $1,000,000 each accident, $1,000,000 each employee for disease, and $1,000,000 policy limit for disease; (e) Primary Commercial Blanket Bond of at least $200,000 each employee; (f) Umbrella Liability of at least $25,000,000 per occurrence and $25,000,000 aggregate; and (g) Pollution Liability of at least $2,000,000 per occurrence; and, (i) Privacy and Network Liability of at least $10,000,000 per claim, and $10,000,000 aggregate, including Data Breach Fund and Regulatory Proceeding. Self-insurance is not acceptable. Supplier's general liability policy must name Dollar Tree Stores, Inc., its parents, subsidiaries and affiliates (direct and indirect) as additional insured and must be underwritten by an insurance carrier authorized to do business in the United States and having a rating of "A-" or better by A.M. Best Company and a Financial Size Category rating of a least Class VIII. All Supplier policies must state the insurance is primary and that any insurance policy owned by Dollar Tree Stores, Inc., its parents, subsidiaries and affiliates (direct and indirect) will be considered as excess and non-contributory to the underlying policy. Products and completed operations coverage shall be maintained not only during the Term of this Agreement but also for at least three (3) years after expiration or termination of this Agreement.

15.    Section 14(a) of the Agreement required Zephyr to provide Dollar Tree with Certificates of Insurance on an annual basis with the following requirements:

a.    CERTIFICATE OF INSURANCE. A certificate of insurance evidencing the required coverage shall be provided to Dollar Tree Stores, Inc. at the address set forth below prior to the first delivery of Product hereunder, annually thereafter (or on such other periodic basis as is necessary to ensure that Dollar Tree Stores, Inc. always has evidence that the required insurance is in effect), and

upon reasonable request. Each certificate shall name Dollar Tree Stores, Inc., its parents, subsidiaries and affiliates (direct and indirect) as additional insured. All certificates shall provide for at least thirty (30) days written notice prior to cancellation of any insurance referred to herein. Certificates shall be provided electronically to Dollar Tree Stores, Inc. at insurance@dollartree.com and by copy to: Dollar Tree Stores, Inc., Attention: Strategic Sourcing and Procurement 500 Volvo Parkway, Chesapeake VA 23320.

16.     In accordance with Section 14(a) of the Agreement, Zephyr provided Dollar Tree with a Certificate of Insurance dated February 6, 2022, issued by Defendant Cincinnati Insurance Company concerning the Policy. *See* **Exhibit B**, Certificate of Insurance.

17.     The coverage provided by the Policy complied with the Agreement's requirements as to personal injury and products liability insurance coverage – providing $1 million in personal injury coverage and $2 million in products liability coverage. However, the coverage therein did not comply with other requirements of Section 14 of the Agreement, including that the Policy's umbrella coverage was limited to $2 million, rather than the required $25 million. *Id.*

18.     To date, despite six requests from Dollar Tree (dated July 1, 14, 16, 17, and 21, 2025), Cincinnati has not provided Dollar Tree with a copy of the Cincinnati Policy.

19.     At all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current such that the Policy provided primary liability insurance to Dollar Tree for the alleged occurrence of June 16, 2022 which was the subject of the Underlying Action filed on October 5, 2022.

## THE ACCIDENT AND CLAIMS

20.     Ms. Pellot filed the Underlying Action on October 5, 2022, alleging that a helium tank nozzle exploded and injured her hand while at a Dollar Tree store in Norwalk, Connecticut on or about June 16, 2022. *See* **Exhibit C,** Underlying Complaint**.**

21.     On June 13, 2023, Dollar Tree moved for leave to implead Zephyr in the Underlying Action as a third-party defendant, because Zephyr may be liable for some or all of Ms. Pellot's alleged damages as Zephyr supplied the helium tank spout that allegedly exploded, causing Ms. Pellot's claimed injuries. *See* Docket No. FBT-CV22-6118553-S, Doc. No. 117 at 71.

22.     On June 15, 2023, the motion to implead was granted. *Id.* at Doc. No. 71 at 4.

23.     On June 29, 2023, the summons was issued on the third-party complaint as to Zephyr. *Id.* at Doc. No. 71 at 103.

24.     On January 2, 2024, the Superior Court ordered Ms. Pellot to file an amended complaint stating facts showing the interest of Zephyr Solutions, LLC in the Underlying Action and summoning Zephyr Solutions, LLC to appear as a defendant in the Action. *Id.* at Doc. No. 124.10.

25.     On March 5, 2024, Ms. Pellot filed an amended complaint alleging, as to Zephyr, products liability claims under Connecticut General Statutes Section 52-572 *et seq*. *Id.* at Doc. No. 131.

## CINCINNATI'S DENIAL OF COVERAGE

26.     On January 30, 2024, Dollar Tree sent a letter to Zephyr tendering the Underlying Action pursuant to the indemnification provision in the Agreement. *See* Dollar Tree January 30, 2024 letter to Zephyr, attached hereto as **Exhibit D**.

27.     Dollar Tree's letter further noted that the Agreement required Zephyr to purchase and maintain minimum limits of general liability insurance naming Dollar Tree as an additional insured, and demanding defense and indemnification thereunder. *Id.*

28.     Cincinnati never responded to Dollar Tree's demand for defense and indemnity under the Cincinnati Policy. Dollar Tree was forced to incur defense costs in engaging its own counsel and defending the case.

29.     On July 1, 2025, Dollar Tree reiterated its demand for defense and indemnity under the Cincinnati Policy. *See* Dollar Tree July 1, 2025 letter to Cincinnati, attached hereto as **Exhibit E**.

30.     On July 7, 2025 and July 9, 2025, Dollar Tree reiterated its demand for defense and indemnity under the Cincinnati Policy. *See*  Dollar Tree July 7 and 9, 2025 correspondence with Cincinnati, attached hereto as **Exhibit F.**

31.     On July 11, 2025, Cincinnati finally denied Dollar Tree's demand for defense and indemnity coverage under the Cincinnati Policy. *See* Cincinnati July 11, 2025 denial letter, attached hereto as **Exhibit G**.

32.     Specifically, Cincinnati cited an exclusion in the "General Liability Broadened Endorsement GA210 (09/17)" which excluded coverage for bodily injury or property damage "arising out of the sole negligence of the vendor for its own acts or

omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to: a) The exceptions contained in Paragraphs (c) (i) 4) or 6) of this endorsement; or b) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products[]" ("Sole Negligence Exclusion"). *Id.*

33.     Cincinnati further claimed that "it is clear that the injuries and losses the plaintiff claims to have sustained were caused solely by the negligence of Dollar Tree and its employees. Exclusion 8 cited above is on point with the facts of this loss, therefore, CIC will not provide Additional Insured status to Dollar Tree." *Id.*

34.     On July 14, 2025, Dollar Tree responded to Cincinnati, informing the insurance company that it was breaching its duty to defend by invoking an inapplicable exclusion to the Policy. Dollar Tree explained to Cincinnati that the Sole Negligence Exclusion did not apply due to evidence of Ms. Pellot and Zephyr's negligence, and that an exception to the exclusion applied for "inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products." *See* Dollar Tree July 14 response to Cincinnati, attached hereto as **Exhibit H.**

35.     In reply, on the same day, Cincinnati changed its position again, denying coverage because "Dollar Tree was not distributing or selling the regulator and would not be a vendor in this case." *See* Cincinnati July 14, 2025 response to Dollar Tree, attached hereto as **Exhibit I.**

36. On that date, Cincinnati provided the Commercial General Liability Broadened Endorsement. *See* Commercial General Liability Broadened Endorsement ("Endorsement"), attached hereto as **Exhibit J.** However, Cincinnati did not, and has not to date, provided the Cincinnati Policy.

37. The Endorsement provides in relevant part:

a.      8. **Automatic Additional Insured – Specified Relationships**

**a.** The following is added to **Section II – Who Is An Insured**:

**(1)** Any person(s) or organization(s) described in Paragraph **8.a.(2)** of this endorsement (hereinafter referred to as an additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

**(2)** Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

* * *

**(c) Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**(i)** The insurance afforded the vendor does not apply to:

* * *

**8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

   a)   The exceptions contained in Paragraphs **(c) (i) 4)** or **6)** of this

10

endorsement; or

b) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

38.    On July 16, 2025, Dollar Tree responded to Cincinnati, informing the insurance company that Dollar Tree was an Automatic Additional Insured under the plain terms of the Endorsement because Zephyr agreed to provide Dollar Tree with insurance pursuant to the Agreement, and the Underlying Action alleges bodily injury arising out the sale of helium in the regular course of Dollar Tree's business. *See* Dollar Tree July 16, 2025 response to Cincinnati, attached hereto as **Exhibit K**.

39.    On July 17, 2025, Cincinnati reiterated its denial of coverage. *See* Cincinnati July 17, 2025 reiterated denial, attached hereto as **Exhibit L.**

40.    On July 21, 2025, Dollar Tree reiterated its demand for coverage. *See* Dollar Tree July 21, 2025 demand, attached hereto as **Exhibit M.**

41.    On July 29, 2025, and pursuant to Practice Book § 10-11 and Connecticut General Statute § 52-102a, Dollar Tree moved to implead Cincinnati as a third-party defendant in the Underlying Action and serve upon Cincinnati a third-party complaint attached thereto. Docket No. FBT-CV22-6118553-S, Doc. No. 178.

42.    On August 11, 2025, the Court denied Dollar Tree's Motion to Implead. (*Id.* at Doc. No. 178.10) in view of the upcoming trial in the Underlying Action.

43.    To date, Cincinnati has not acknowledged coverage under the Cincinnati Policy, provided Dollar Tree with a copy of the Policy, or provided Dollar Tree with a defense in the Underlying Action, or indemnity coverage.

## FIRST COUNT:
## DECLARATORY JUDGMENT (DUTY TO DEFEND)

44. Dollar Tree repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. Pursuant to 28 U.S.C. § 2201, Dollar Tree seeks declaratory judgment for the purpose of determining questions of actual controversy between the parties regarding the Cincinnati Policy. This Court has jurisdiction to declare the rights, status, and other legal relations of the parties.

46. Dollar Tree is an Additional Insured under the Cincinnati Policy.

47. The coverages provided to Dollar Tree under the Cincinnati Policy are primary to, and non-contributory with, any other coverage.

48. The Underlying Action triggers Cincinnati's coverage obligations.

49. Cincinnati has a duty under the Cincinnati Policy to defend Dollar Tree, and to reimburse Dollar Tree for the defense costs that Dollar Tree has incurred to date in connection with the Underlying Action.

50. Cincinnati has breached its obligations under the Cincinnati Policy by failing to honor or by disputing its coverage obligations under the Cincinnati Policy with respect to the Underlying Action, and specifically, by failing to defend Dollar Tree in the Underlying Action or reimburse any of the defense costs that Dollar Tree has incurred in defending the Underlying Action.

51. Dollar Tree is entitled to declaratory judgment by this Court of its rights and the obligations of Cincinnati under the Cincinnati Policy with respect to the Underlying Action.

52.     An actual and justiciable controversy has arisen between Dollar Tree and Cincinnati as to the meaning and application of the Cincinnati Policy regarding whether Cincinnati must defend Dollar Tree in the Underlying Action and reimburse Dollar Tree for defense costs incurred to date.

53.     Dollar Tree has incurred defense costs in amounts exceeding $150,000 to defend itself against the Underlying Lawsuit.

54.     Accordingly, Dollar Tree seeks a judicial declaration that the coverages provided by the Cincinnati Policy to Dollar Tree are primary; that Cincinnati has an obligation to defend Dollar Tree as additional insured under the Cincinnati Policy; that Cincinnati must reimburse Dollar Tree for the defense costs that Dollar Tree has incurred to date in defending the Underlying Action; and that any obligations of Dollar Tree are excess of proper exhaustion and full payment of the limits of the Cincinnati Policy.

55.     Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

**SECOND COUNT:**
**DECLARATORY JUDGMENT (DUTY TO INDEMNIFY)**

56.     Dollar Tree repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57.     Pursuant to 28 U.S.C. § 2201, Dollar Tree seeks declaratory judgment for the purpose of determining questions of actual controversy between the parties regarding the Cincinnati Policy. This Court has jurisdiction to declare the rights, status, and other legal relations of the parties.

58.    Dollar Tree is an Additional Insured under the Cincinnati Policy.

59.    The coverages provided to Dollar Tree under the Cincinnati Policy are primary to, and non-contributory with, any other coverage.

60.    The Underlying Action triggers Cincinnati's coverage obligations.

61.    The Cincinnati Policy provides coverage for damages that Dollar Tree becomes legally obligated to pay arising out of the Underlying Action.

62.    Under the terms of the Cincinnati Policy, Cincinnati has a duty to indemnify Dollar Tree for liability in the Underlying Action.

63.    Dollar Tree may incur damages from the Underlying Action, all of which arise from bodily injury from Zephyr's products, which are distributed or sold in the regular course of Dollar Tree's business, and constitute a single occurrence.

64.    Cincinnati has breached its obligations under the Cincinnati Policy by failing to honor or by disputing its coverage obligations under the Policy with respect to the Underlying Action, and specifically, by disclaiming indemnity coverage for the Underlying Action.

65.    Dollar Tree is entitled to declaratory judgment by this Court of its rights and the obligations of Cincinnati under the Cincinnati Policy with respect to the Underlying Action.

66.    An actual and justiciable controversy has arisen between Dollar Tree and Cincinnati as to the meaning and application of the Cincinnati Policy, and regarding whether Cincinnati must indemnify Dollar Tree for damages that Dollar Tree becomes legally obligated to pay in the Underlying Action.

14

67.     Accordingly, Dollar Tree seeks a judicial declaration that the coverages provided by the Cincinnati Policy to Dollar Tree are primary; that Cincinnati has an obligation to indemnify Dollar Tree as additional insured under the Cincinnati Policy for all damages that Dollar Tree becomes legally obligated to pay in the Underlying Action, including by reasonable settlement; and that any obligations of Dollar Tree are excess of proper exhaustion and full payment of the limits of the Cincinnati Policy.

68.     Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

### THIRD COUNT:
### BREACH OF CONTRACT TO DEFEND

69.     Dollar Tree repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

70.     Cincinnati issued the Cincinnati Policy, a Commercial General Liability insurance policy, with a Policy Period of February 6, 2022 to February 6, 2023.

71.     The Cincinnati Policy is a legally enforceable, mutually binding contract of insurance between Dollar Tree and Cincinnati, including the "Automatic Additional Insured" provisions of the Commercial General Liability Broadened Endorsement, taken in conjunction with the additional insured requirements of the Agreement.

72.     Dollar Tree is an Additional Insured under the Cincinnati Policy.

73.     At all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current such that the Policy provided primary liability insurance to Dollar Tree for the alleged occurrence of June 16, 2022 which was the subject of the Underlying Action filed on October 5, 2022.

74.    The Underlying Action against Dollar Tree asserted claims of bodily injury arising from Zephyr's products which are distributed or sold in the regular course of Dollar Tree's business.

75.    The allegations of the Underlying Action against Dollar Tree triggered Cincinnati's duty to defend Dollar Tree under the Cincinnati policy.

76.    The Cincinnati Policy provides coverage for defense expenses, including the costs arising out of the Underlying Action.

77.    Dollar Tree has incurred defense expenses and damages arising from the Underlying Action in amounts exceeding $150,000. These amounts were incurred defending against Ms. Pellot's claims of bodily injury – which alleged injury arose from Zephyr's products which are distributed or sold in the regular course of Dollar Tree's business and which constitute a single occurrence.

78.    Dollar Tree has satisfied all obligations under the Cincinnati Policy and has complied with all conditions necessary for coverage under the Cincinnati Policy.

79.    Cincinnati has breached its obligations under the Cincinnati Policy by refusing to defend Dollar Tree in the Underlying Action, or reimburse the defense costs that Dollar Tree has and will incur in defending the Underlying Action.

80.    Dollar Tree has incurred, and will continue to incur, substantial damages on account of Cincinnati's breaches.

81.    As a direct and proximate result of Cincinnati's breach of contract, Cincinnati is liable to Dollar Tree for damages, the exact amount to be proven at trial,

including but not limited to, compensatory and consequential damages, attorneys' fees and costs, and pre- and post-judgment interest.

## FOURTH COUNT:
## BREACH OF CONTRACT TO INDEMNIFY

82.     Dollar Tree repeats and realleges paragraphs 1 through 81 as if fully set forth herein.

83.     Cincinnati issued the Cincinnati Policy, a Commercial General Liability insurance policy, with a Policy Period of February 6, 2022 to February 6, 2023.

84.     The Cincinnati Policy is a legally enforceable, mutually binding contract of insurance between Dollar Tree and Cincinnati, including the "Automatic Additional Insured" provisions of the Commercial General Liability Broadened Endorsement, taken in conjunction with the additional insured requirements of the Agreement.

85.     Dollar Tree is an Additional Insured under the Cincinnati Policy.

86.     At all times relevant hereto, the Cincinnati Policy was in full force and effect and all premium payments were current such that the Policy provided primary liability insurance to Dollar Tree for the alleged occurrence of June 16, 2022 which was the subject of the Underlying Action filed on October 5, 2022.

87.     The Underlying Action against Dollar Tree asserted claims of bodily injury arising from Zephyr's products which are distributed or sold in the regular course of Dollar Tree's business.

88.     The allegations of the Underlying Action against Dollar Tree triggered Cincinnati's duty to indemnify Dollar Tree under the Cincinnati policy.

89.     The Cincinnati Policy provides coverage for damages that Dollar Tree becomes legally obligated to pay arising out of the Underlying Action.

90.     Under the terms of the Cincinnati Policy, Cincinnati has a contractual obligation to indemnify Dollar Tree for liability in the Underlying Action.

91.     Dollar Tree may incur damages from the Underlying Action, all of which arise from bodily injury from Zephyr's products, which are distributed or sold in the regular course of Dollar Tree's business, and which constitute a single occurrence.

92.     Dollar Tree has satisfied all obligations under the Cincinnati Policy and has complied with all conditions necessary for coverage under the Cincinnati Policy.

93.     Cincinnati has breached its obligations under the Cincinnati Policy by disclaiming indemnity coverage.

94.     As a direct and proximate result of Cincinnati's breach of contract, Cincinnati is liable to Dollar Tree for damages, the exact amount to be proven at trial, including but not limited to, compensatory and consequential damages, attorneys' fees and costs, and pre- and post-judgment interest.

### FIFTH COUNT:
### BAD FAITH AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

95.     Dollar Tree repeats and realleges paragraphs 1 through 94 as if fully set forth herein.

96.     Implied in every contract is a duty of good faith and fair dealing. All insurance companies, including Cincinnati, owe their policyholders a duty of good faith and fair dealing.

97.    An insurance company breaches this duty any time it acts without reasonable justification in the handling of a policyholder's claim or when it takes a coverage position that has no lawful basis or is arbitrary and capricious.

98.    When an insurance company breaches its duty of good faith and fair dealing, the policyholder has a cause of action in tort that is distinct from the policyholder's breach of contract claim.

99.    Cincinnati has acted in bad faith and without reasonable justification in the handling of Dollar Tree's claim for coverage for the Underlying Action.

100.    In adjusting and denying Dollar Tree's claim, Cincinnati, through its adjuster, agents, and investigators, acted unreasonably, without reasonable justification, in bad faith, and in violation of the implied covenant of good faith and fair dealing.

101.    Cincinnati, through its adjusters, agents, and investigators, acted intentionally, willfully, wantonly, and with actual malice in refusing to pay plaintiff's claim.

102.    Cincinnati failed to conduct a fair and reasonable investigation into Dollar Tree's claim. For example, Cincinnati did not respond (at all) to the initial demand for defense and indemnity under the Cincinnati Policy through its Insured Zephyr, and thereafter unreasonably, inadequately, and improperly investigated Dollar Tree's claims and request for coverage.

103.    Cincinnati also acted in bad faith and without reasonable justification by continuing to assert, and to avoid its coverage obligations based on, the erroneous legal

position that Dollar Tree was not an Automatic Additional Insured under the Cincinnati Policy, and various irrelevant exclusions.

104.    Cincinnati thus deliberately and wrongfully breached its contractual and statutory duties to Dollar Tree by, among other things: (i) refusing to timely acknowledge a covered claim, (ii) failing to assume the defense and indemnity coverage due to its policyholder, Dollar Tree, (iii) denying a covered claim for pretextual reasons, and (iv) notwithstanding its refusal as to its policyholder Dollar Tree, agreeing to defend and indemnify its policyholder Zephyr under the Cincinnati Policy on the same claim, leaving Dollar Tree underinsured.

105.    Cincinnati further breached its duty of good faith and fair dealing by compelling Dollar Tree to institute and litigate this action in order to gain the benefits of the Cincinnati Policy.

106.    Cincinnati further breached its duty of good faith and fair dealing by ignoring its own ethical standards and claims-handling procedures, which require that a claims-handler discover and disclose all the bases for finding, not avoiding, insurance coverage.

107.    Cincinnati's refusal to honor its contractual obligations under the insurance policies and at law was frivolous, unfounded, and contrary to law.

108.    Cincinnati's refusal to honor their statutory and contractual obligations is a breach of the covenant of good faith and fair dealing. In refusing to pay Dollar Tree's defense and indemnity, Cincinnati failed to use good faith and honest judgment and

failed to use a level of care and diligence that a person of ordinary prudence would

exercise in the management of his or her own business.

109.    Dollar Tree repeatedly made Cincinnati aware of the factual and legal

reasons why Cincinnati erred in denying coverage to Dollar Tree under the Cincinnati

Policy.

110.    Cincinnati had no reasonable justification for taking its coverage

positions and Cincinnati had actual knowledge of that fact or was recklessly indifferent

in failing to determine whether there was a reasonable justification for taking these

coverage positions.

111.    Cincinnati and its affiliates have asserted policy interpretations with

respect to other of its policyholders that are inconsistent with the interpretations

Cincinnati has asserted against Dollar Tree.

112.    Cincinnati acted with a conscious disregard for the rights of Dollar Tree

which had a great probability of causing substantial harm, which was foreseeable at the

time of contracting.

113.    Cincinnati's deliberate and repeated refusals to provide coverage has

been oppressive, undertaken in complete disregard of, and in reckless indifference to the

rights and interests of Dollar Tree for the dishonest purpose of preventing Dollar Tree

from receiving the full benefits of its insurance policies. In denying coverage, Cincinnati

failed to give Dollar Tree's interests equal consideration with its own interests. As such,

Cincinnati has acted in bad faith and breached the covenant of good faith and fair

dealing inherent in the Policy.

114.     As a result of Cincinnati's bad faith denial of coverage, Dollar Tree has

been forced to incur undue expenses and pay for the services of attorneys.

115.     As a result of Cincinnati's bad-faith conduct, Dollar Tree has incurred,

and will continue to incur, economic harm, and has incurred litigation expenses and

attorneys' fees, and damages in an amount to be determined at trial.

116.     Cincinnati's bad-faith conduct entitles Dollar Tree to its attorney's fees

and expenses incurred prior to and in connection with this lawsuit, along with punitive

damages, and such other and further relief as the Court deems just and proper.

## SIXTH COUNT:
## VIOLATIONS OF CUTPA AND CUIPA

117.     Dollar Tree repeats and realleges paragraphs 1 through 116 as if fully set

forth herein.

118.     The Connecticut Unfair Trade Practices Act, C.G.S. § 42-110b, provides

that "(a) No person shall engage in unfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce."

119.     The Connecticut Unfair Insurance Practices Act, C.G.S. § 38a-816,

proscribes "unfair and deceptive acts or practices in the business of insurance" and

provides, in pertinent part, that insurance companies must follow certain statutory

requirements in their claims handling practices.

120.     Cincinnati is a "person" within the meaning of C.G.S. § 42-110b and

§38a-816, *et seq*.

121.    Cincinnati is licensed and regulated by the State of Connecticut through its administrative agencies and subject to the statutes and regulations of the State of Connecticut. Cincinnati sells insurance regularly throughout the State of Connecticut.

122.    At all relevant times, Cincinnati engaged in the business of insurance within the meaning CUIPA.

123.    At all relevant times, Cincinnati has been, and continues to be, engaged in the conduct of trade or commerce within the meaning of CUTPA.

124.    Cincinnati's conduct violates CUTPA, insofar as it constitutes unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of C.G.S. § 42-110b.

125.    Cincinnati's conduct also violates CUIPA, for which Dollar Tree may seek redress through CUTPA.

126.    Cincinnati sold the Cincinnati Policy to Zephyr and Dollar Tree as an all-in-one protection for Dollar Tree from loss.

127.    Cincinnati regularly markets its Commercial General Liability insurance products to businesses in the State of Connecticut as all-in-one protection against loss, including loss caused by bodily injury.

128.    Cincinnati's advertising of its Commercial General Liability insurance coverage is untrue, immoral, oppressive, unethical, unscrupulous, deceptive and/or misleading. Cincinnati routinely misrepresents the benefits, advantages, conditions and terms of its Commercial General Liability insurance policies.

129.    Cincinnati has a general business practice and pattern of misrepresenting the provisions of insurance policies that it sells that relate to coverages at issue in claims presented to them.

130.    Cincinnati and Cincinnati-affiliated companies have faced multiple lawsuits alleging bad faith practices in connection with Cincinnati's claims handling, including claims that Cincinnati adopted similarly unreasonable positions as to the meaning of similar insurance policy terms as to its similarly situated additional insureds like Dollar Tree. *See, e.g. Cincinnati Ins. Co. v. Richfield Corp*., 395 F. Supp. 3d 894, 907 (E.D. Mich. 2019) (Levy, J.) (judgment for additional insured); *LM Ins. Corp. v. Safety Nat'l Cas. Corp*., 695 F. Supp. 3d 270, 301 (E.D.N.Y. 2023) (Matsumoto, J.) (same); *LM Ins. Co. v. Cincinnati Ins. Co*., 2024 U.S. Dist. LEXIS 15851, at *26 (N.D. Tex. Jan. 30, 2024) (Kinceade, J.) (same);  *Superior Pool Prods. LLC v. Cincinnati Ins. Co*., 2015 U.S. Dist. LEXIS 189155, at *17 (D.S.C. Sep. 11, 2015) (Hendricks, J.) (same); *Cincinnati Ins. Co. v. Mo. Highways & Transp. Comm'n*, 2014 U.S. Dist. LEXIS 128394, at *55 (W.D. Mo. Sep. 15, 2014) (Laughrey, J.) (same); *Kummer Enters. v. Valley Forge Ins. Co*., 2011 U.S. Dist. LEXIS 17726, at *13 (W.D. Mich. Feb. 23, 2011) (Bell, J.) (same); *Cincinnati Ins. Co. v. Dawes Rigging & Crane Rental, Inc*., 321 F. Supp. 2d 975, 982 (C.D. Ill. 2004) (McCuskey, J.) (same); *see also Certain Underwriters at Lloyd's v. Cincinnati Indem. Co.,* 2025 U.S. Dist. LEXIS 62766, at *9 (E.D. Mo. Mar. 31, 2025) (Schelp, J.) (denying judgment to insurer); *see also Twin City Fire Ins. Co. v. Cincinnati Ins. Co.,* c.v.  1:25-cv-00980 (S.D. Ind. May 20, 2025) (complaint); *Phoenix Ins. Co. v. The Cincinnati Ins. Co.,* c.v. 3:23-cv-00535 (D. Or.

April 12, 2023) (complaint); *The Charter Oak Fire Ins. Co. v. The Cincinnati Ins. Co.,*

c.v. 6:24-cv-1485-DNH/ML (N.D.N.Y. December 6, 2024)(complaint); *Houston Int'l v.*

*The Cincinnati Ins. Co.,* c.v. 3:18-cv-03148-MGL (D.S.C. Nov. 20, 2018)(complaint).

      131.    Upon information and belief, Cincinnati has a general business practice

of:

    a.    misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

    b.    failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies;

    c.    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    d.    refusing to pay claims without conducting a reasonable investigation based upon all available information;

    e.    failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

    f.    not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

    g.    compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

    h.    attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

    i.    making claims payments to insureds or beneficiaries not accompanied by statements setting forth the coverage under which the payments are being made;

    j.    failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

k.      failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

132.    Cincinnati's general business practices, including those set forth herein that have caused damage to Dollar Tree, violate Connecticut General Statutes § 42-110a et seq.

133.    Cincinnati's general business practices, including those set forth herein that have caused damage to Dollar Tree, violate Connecticut General Statutes § 38a-815 et seq., including Connecticut General Statutes § 38a-816(6).

134.    As a result of Cincinnati's violation of Connecticut statute(s) and reckless indifference to the rights of its policyholders, including Dollar Tree, Dollar Tree has suffered damages and has been forced to incur undue expenses and pay for the services of attorneys.

135.    Dollar Tree is entitled to receive compensation for the substantial damages, including litigation costs and attorneys' fees that it incurred as a result of Cincinnati's bad faith denial of coverage and unlawful claims handling practices. Dollar Tree is further entitled to compensatory and punitive damages in an amount to be established at trial, as well as such other and further relief as the Court deems just and proper, including compensatory and punitive damages awarded pursuant to Connecticut General Statutes § 42-110g.

136.    A copy of this Complaint will be provided to the Office of the Attorney General of Connecticut and the Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, Dollar Tree Stores, Inc., demands judgment in its favor

and against Defendant Cincinnati Insurance Company:

    a.    Declaring and adjudging the rights and obligations of the parties with respect to the defense and indemnity coverage for the Underlying Claims;

    b.    Compensatory and consequential damages in favor of Dollar Tree against Cincinnati for Cincinnati's breach of its contract to insure Dollar Tree;

    c.    Compensatory, exemplary, and punitive damages in favor of Dollar Tree for Cincinnati's bad faith and breach of the duty of good faith and fair dealing;

    d.    Punitive damages and additional damages in favor of Dollar Tree under Connecticut General Statutes § 42-110g;

    e.    Reasonable attorneys' fees and expenses in favor of Dollar Tree under Connecticut General Statutes § 42-110g(d);

    f.    Pre- and post-judgment interest; and

    g.    All other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial as to all issues so triable.

***

Signatures on Following Page

Dated: Wednesday, August 20, 2025       Respectfully submitted,

Dollar Tree Stores, Inc.
By its attorneys,

Kevin J. O'Leary, ct30271
Benjamin H. Levites, ct30481
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
(617) 988-8050
koleary@coughlinbetke.com
blevites@coughlinbetke.com